at the trial. Scrantom v. Bank, 24 N. Y. 426; Merritt v. Walsh, 32 N. Y. 690. The authorities cited by the learned counsel for the plaintiff have no application to the rule invoked in this case. The plea of abatement was not interposed in any of those cases. It seems to me that the insurance companies are necessary parties plaintiff to this action. They are certainly interested in the subject-matter. The claim of the plaintiff and that of the insurance companies are not distinct and independent claims. The action is for a single wrongful act, arising out of the same transaction, in which the plaintiff and the insurance companies have a joint interest, and should be joined, so as to avoid another suit.

The demurrer, therefore, must be overruled, with costs against the plaintiff.

---

## DODIN v. DODIN.

(Supreme Court, Appellate Term. July 6, 1900.)

LANDLORD AND TENANT—PROOF OF RELATION—TENANT AT WILL—SUMMARY DISPOSSESSION.

Plaintiff alleged that her stepson occupied a stable as her tenant at will. She testified that in November, 1892, she told the stepson that he must vacate the premises, and that he cried, and said he would kill his horse if he had to go, and left her presence. No further reference to the stable was ever made between them, and the stepson remained in possession. *Held* not sufficient to establish the relation of landlord and tenant, necessary to maintain a summary action to dispossess, since it failed to show any recognition of the plaintiff's rights by the son.

Appeal from municipal court, borough of the Bronx, Second district.

Action by Celina Dodin against Alphonse J. Dodin. From a judgment in favor of defendant on a motion to dismiss, plaintiff appeals. Affirmed.

The following is the opinion of the municipal court (TIERNEY, J.):

This is a summary proceeding for the removal of the occupant of a stable on the east side of Union avenue, about 190 feet north of 161st street. The landlord alleges that the occupant is a tenant at will of said premises, under an agreement to be such, which the bill of particulars states was made verbally in November, 1892. It is conceded that the required statutory notice for the termination of a tenancy at will has been given to the occupant. This and the occupation are admitted, and all other allegations of the petition are denied. The landlord is the stepmother of the occupant. Her husband, who was his father, died about 15 years ago. The house which forms part of the same premises with the stable was the home of the deceased, and the landlord and the children of her deceased husband continued to live there after his death. Her husband left a will devising his homestead to his widow for life, and it appears that the stable is part of the property that was owned by the deceased while he lived, although the proof of such ownership is rather inferential than direct. The occupant appears to have been using the stable for a number of years, and now has a veterinary hospital located there. The mere fact of his occupation, without proof of recognition of the landlord's title, or of admission by word or act of his holding possession as her tenant, does not establish the conventional relation of landlord and tenant, which the landlord must show to exist as a basis for this proceeding. The only proof presented for this purpose is the landlord's statement that in November, 1892, she told the occupant that he must vacate the stable, and that he cried, and said he would kill his horse if he had to go, and left her presence. She states positively that no further reference was ever made between them to the

stable. I do not think that this is sufficient to show that the occupant thereby became the tenant of the landlord, or agreed to recognize her as such. Certainly no such express agreement can be spelled out of what was said between them at that time. The fact that the occupant retained his uninterrupted possession from that time tends, rather, to show a refusal on his part to recognize the landlord's right and title to terminate his holding at will, than to establish an acquiescence in or recognition of that relationship. The landlord, assuming the right to dispose of the occupant's holding, gave him notice to remove, and that notice was never withdrawn; and yet in spite thereof the occupant has continued to use the premises for all these years without seeking any withdrawal of that notice, or making any agreement for continuing his possession. Upon such a state of proof, I do not feel justified in holding that the landlord has made out a case establishing possession by the occupant as her tenant, and the motion to dismiss the proceeding must be granted.

Argued before TRUAX, P. J., and SCOTT and DUGRO, JJ.

M. J. Earley, for appellant.
M. P. Doyle, for respondent.

PER CURIAM. Final order affirmed, with costs, upon the opinion of the justice below.

---

WILSON v. TENNENT.

(Supreme Court, Trial Term, Livingston County. February, 1900.)

NATURAL GAS COMPANY—REFUSAL TO SUPPLY GAS—PENALTY.
   Laws 1890, c. 566, §§ 60, 65, 66, authorizing the formation of corporations for manufacturing and supplying gas for lighting streets and buildings, and providing a penalty for such company's refusal to supply gas to consumers on application, does not apply to a natural gas company.

Action by James A. Wilson against James C. Tennent. Judgment for defendant.

George D. Forsyth, for plaintiff.
William Carter, for defendant.

DAVY, J. This action is brought to recover penalties for refusing to supply the plaintiff with natural gas for lighting his residence in the village of Caledonia, Livingston county, N. Y. It appears from the evidence taken upon the trial that the Caledonia Gas Light & Heating Company was organized on the 21st day of December, 1895, pursuant to the provisions of the business corporations law, to bore, drill, dig, or mine for natural gas. Shortly after the company was incorporated, it presented to the board of trustees of the village of Caledonia a written application for permission to lay its pipes and mains through the public streets and highways of said village for the purpose of conducting natural gas for lighting the streets, public places, and private dwellings. It was stated in the application that the price of gas to consumers should not exceed 25 cents per 1,000 feet. After receiving permission from the municipal authorities, the company laid its conductors in the streets, and furnished gas to consumers at 25 cents per 1,000 feet until about the month of November, 1897, when it increased the price to 40 cents per 1,000 feet. On the 20th day of December, 1898, the property and franchise of the company were sold at foreclosure sale to the defendant, who, after he be-